LARRY M. ROSEN & ASSOCIATES,
INC., et al., Appellants,

v.

Nancy J. HURWITZ, Appellee.

No. 82–412.

District of Columbia Court of Appeals.

Argued Feb. 24, 1983.

Decided Aug. 15, 1983.

Allen R. Snyder, Washington, D.C., with whom Elliot M. Mincberg and Peter R. Kolker, Washington, D.C., were on brief, for appellants.

Kenneth J. Rose, Washington, D.C., with whom James R. Barnett, Washington, D.C., was on brief, for appellee.

Before KERN and PRYOR, Associate Judges, and KELLY, Associate Judge, Retired.[1]

KELLY, Associate Judge, Retired:

Our review in this appeal of a series of rulings by the trial court leads us to reverse and remand for trial on the merits.

### I

On June 9, 1981, appellee Hurwitz sued appellants Larry M. Rosen and Associates, Inc. (LMR), Larry M. Rosen, and Andrea Lomrantz, for breach of an employment contract (two counts), "estoppel to deny employment agreement for term of three years," "tort of abusive discharge," "breach of employment contract's implied covenant of good faith and fair dealing," "tortious interference with employment contract" (by Lomrantz), and "fraudulent misrepresentation." She sought damages of $2,500 per month from the date of her discharge, $1,000,000 compensatory damages for tortious conduct, punitive damages of $2,000,-000, reasonable attorney's fees and costs, and such other and further relief required by law. Appellant Swiss was counsel for her co-appellants in the trial court.[2]

Appellee attempted service of the complaint at LMR's corporate address by registered mail on June 11, 1981. The mail was apparently opened by a receptionist authorized to open any letters addressed to appellants and a copy of the complaint was supposedly delivered to each one. An affidavit of service was filed by Kenneth J. Simon-Rose (now Rose), counsel for appellee, on June 25. Interrogatories and a request for production of documents were served on LMR on June 26. Appellants LMR, Rosen and Lomrantz, through counsel, filed motions to quash service of process on June 30, on the ground that service was not made on an agent authorized by appointment or by law to receive the same. Opposition to the motions to quash was filed on July 13, as was a motion to strike the motions. At the same time, appellee also moved for a default judgment and for attorney's fees and costs. The opposition and the motions for affirmative relief were based on allegations that appellants were properly served by registered mail and the motions to quash were a sham. They, in turn, were opposed by appellants on July 23, as moot (the motion to strike) and as premature (the motion for default judgment). Appellants' opposition also included authorities supporting the pending motions to quash. Appellee replied to the opposition on August 4, 1981.

Meanwhile, back on July 6, 1981, appellants LMR and Rosen had accepted service of the summons and complaint by a special process server. Moreover, they had noticed and had taken appellee's deposition on July 13, and LMR had answered the complaint on July 27. That same day Rosen had moved to dismiss the complaint as to himself individually and both LMR and Rosen had moved to dismiss the cause of action for tortious interference with employment contract and for a protective order allowing

---

1. Judge Kelly was an Associate Judge of the court at the time of argument in this case. Her status changed to Associate Judge, Retired, on March 31, 1983.

2. Except where noted, reference to the appellants in this opinion does not include appellant Swiss.

LMR to defer answering interrogatories and producing documents until appellee's deposition could be transcribed and a motion for summary judgment filed. These motions had been opposed by appellee, who also, on July 7, attempted service on Lomrantz for the third time by certified mail to her home. The papers were returned unclaimed.

All pending motions were set for hearing on August 3, 1981, but because the court refused appellant Swiss' request for a continuance based on long-standing vacation plans, the matters were submitted on the pleadings. Thereafter, the various oppositions and replies noted above were filed.

On August 14, 1981, the trial judge ruled. First, he denied the appellants' motions to quash. He then granted appellee's motion to strike the motions to quash (which he had already denied); granted her motion to enter default judgments against appellants; granted the motion for attorney's fees against appellants and against counsel as a result of "dilatory and abusive litigation tactics"; and ordered appellee to file an application for an award of damages based on the allegations of the complaint and for attorney's fees and costs as awarded by his order. Appellants moved for reconsideration and to set aside the default judgments on September 1, 1981, and at the same time appellant Lomrantz answered the complaint. Appellee's deposition was filed the next day.

The court refused to set aside the August 14 order and, upon her application, and without a hearing, awarded appellee compensatory damages of $6,270.08, punitive damages of $30,000, and attorney's fees and costs of $5,603.32, the latter award being against counsel as well as appellants. Interest was to accrue immediately upon the filing of the order. A subsequent motion for new trial or relief from judgment was denied and this appeal followed.

## II

We do not agree with the court's finding of "abusive and dilatory litigation tactics"

in this case. After the complaint was filed, service was attempted by registered mail at appellants' place of business under Super. Ct.Civ.R. 4(c)(3), which provides in part:

(c) BY WHOM SERVED. Service of process shall be made in one of the following ways which may, at the plaintiff's election, be attempted either concurrently or successively; ...

\* \* \* \* \* \*

(3) By the plaintiff or his agent, by mailing a copy of the summons and complaint to the defendant by registered or certified mail and filing with the court the signed return receipt attached to an affidavit which shall specifically state each of the following: The caption and number of the case; the date upon which the summons and complaint were mailed and by whom they were mailed; and, if the return receipt does not purport to be signed by the party named in the summons, then specific facts from which the court can determine that the person who signed the receipt meets the appropriate qualifications for receipt of process set out in section (d) of this rule. Service shall be deemed made as of the date the return receipt was signed.

And Super.Ct.Civ.R. 4(d)(1) and (3) provide:

(d) SUMMONS: PERSONAL SERVICE. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

(1) Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

\* \* \* \* \* \*

(3) Upon a domestic ... corporation ... by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Appellants moved to quash service of process pursuant to the provisions of Rule 12(b)(5).[3] Nevertheless, while their motions were pending, and with the cooperation of their counsel, appellants LMR and Rosen accepted personal service of the summons and complaint. Appellant LMR answered the complaint, appellant Rosen moved to dismiss individually, and both moved to dismiss the claim of tortious interference with an employment contract. Thus at the time the court ruled on the motions to strike and to enter default judgment, two of the appellants had been personally served, one of whom (LMR) had answered the complaint and the other (Rosen) had moved to dismiss. Consequently, the motions to quash as to LMR and Rosen were moot and there was pending only a motion to quash service as to appellant Lomrantz.

█ The court, however, ruled on the motions to quash as to all three appellants, denying the motions in one breath and striking them in the next. He struck the motions because of alleged abusive and dilatory litigation tactics, presumably taking at face value appellee's contention that the challenge to the service of process was a sham. If that was his reason, striking the motions to quash was error. A receptionist in one's office, even if authorized to sign for and open all of the mail, is not necessarily authorized to accept service of process. *See Morfessis v. Marvins Credit, Inc.,* 77 A.2d 178, 180 (D.C.1950) (status as secretary and sole office employee did not establish agency to receive service of process for employer); *cf. Nelson v. Swift,* 106 U.S.App.D.C. 238, 271 F.2d 504 (1959) (per curiam) (without express appointment, resident manager of apartment is not agent of the landlord for service of process); *Schwarz v. Thomas,* 95 U.S.App.D.C. 365, 222 F.2d 305 (1955) (attorney representing client in one matter is not an agent of client for service of process in different matter); *Hardy v. O'Daniel,* 16 F.R.D. 355 (D.D.C.1954) (agent for purpose of collecting payments due the principal is not an agent of the principal for service of process, absent express authorization). Unless such authorization is shown, there is nothing sinister or abusive in moving to quash service of process.

█ Indeed, appellee appeared to recognize that her first attempt at service was arguably defective when she employed a special process server to obtain personal service, and it was appellants' counsel who assisted in arranging for two of the appellants to personally accept copies of the summons and complaint on the second try. It is unrealistic for the court or for counsel to suppose that on a third try, appellant Lomrantz was legally obliged to go to the post office and pick up a certified letter containing process.[4]

█ But even if the trial judge was correct in striking the motions to quash, he could not have entered a default against those persons who had appeared and filed

---

3. Super.Ct.Civ.R. 12(b) provides in part:
  HOW PRESENTED. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (5) insufficiency of service of process, ....

4. Appellee's attempted reliance on rules of the Small Claims branch of the court is inappropriate. Our cases establish that faulty service of process cannot be cured merely by actual receipt of the summons and complaint. *See Parker v. Frank Emmet Real Estate,* 451 A.2d 62 (D.C.1982) (citing *Morfessis v. Marvins Credit, Inc., supra).* "Rather, actual receipt may be viewed as further supporting the validity of service which was otherwise proper." *Id.* at 66. The contrary language set forth in Super. Ct.Sm.Cl.R. 4(b)(1) is applicable only to proceedings within that division.

pleadings in the case. Super.Ct.Civ.R. 55, which provides for entry of default, says:

(a) ENTRY. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.

\* \* \* \* \* \*

(2) BY THE COURT. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or other such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any applicable statute.[5]

He did not strike the answer of LMR, nor did he rule on Rosen's motion to dismiss, and Lomrantz had ten days to answer the complaint once her motion to quash was denied. *See* Super.Ct.Civ.R. 12(a)(1).

---

5. Appellee had demanded a jury trial. There is no indication the jury demand was withdrawn. *See* Super.Ct.Civ.R. 55–I.

6. Having concluded that his finding of a default by these appellants was error, we need not address the issue whether the judge abused his discretion in denying appellants' motion to vacate the judgment of default.

Thus, no one was in default at the time the entry was made.[6]

▉▉▉ Upon what authority the court entered judgment against counsel is unclear. Appellee cites Super.Ct.Civ.R. 11, which reads in part:

### SIGNING THE PLEADINGS

Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address and telephone number shall be stated.... The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a willful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted.

However, if an attorney in good faith believes there is a demonstrable legal issue on the validity of service, even if the client is believed to be evading service, a motion to quash service cannot be labelled a sham pleading. Moreover, Rule 11 does not explicitly provide for an award of fees against counsel, nor does any other authority so provide. *See Roos v. LaPrade,* 444 A.2d 950 (D.C.1982) (per curiam).[7]

▉▉▉ Entry by the court of a judgment for damages, upon application of appellee, against appellants and their counsel, without a hearing, was also error. By that time

---

7. We note that the preliminary draft of proposed amendments to Fed.R.Civ.P. 11 recommends changing it to authorize the court to impose an appropriate sanction, including an award of fees, on any person who signs a pleading which violates the rule. *See* 90 F.R.D. 451, 462 (1981).

all appellants had filed verified answers (with the motion to vacate default). The damages were unliquidated, and even had an entry of default been proper, appellants were entitled to a hearing to contest damages.[8] *See Firestone v. Harris,* 414 A.2d 526, 528 n. 4 (D.C.1980) (referring to the dissenting opinion of Chief Judge Hood in *Ramey v. Hewitt,* 188 A.2d 350, 351 (D.C. 1963), which recognized that a defaulting party who has appeared in the case is entitled to participate in the hearing to establish damages); *accord Jackson v. Beech,* 205 U.S.App.D.C. 84, 88, 636 F.2d 831, 835 (1980) (dictum) ("Modern courts are also reluctant to enter and enforce judgments unwarranted by the facts. This may be why a court must hold a hearing on damages before entering a judgment on an unliquidated claim even against a defendant who has been totally unresponsive."); *Davis v. Fendler,* 650 F.2d 1154, 1161 (9th Cir. 1981); *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir.1979); *Eisler v.*

*Stritzler,* 535 F.2d 148, 153–54 (1st Cir. 1976). *See also Flaks v. Koegel,* 504 F.2d 702, 706–07 (2d Cir.1974) (once liability is established, the amount of punitive damages recoverable cannot be fixed without an evidentiary hearing).

Accordingly, for the reasons discussed, we reverse the trial court's order entering default judgments against appellants LMR, Rosen and Lomrantz, vacate the award of compensatory and punitive damages against these appellants and of attorney's fees and costs against these appellants and co-appellant Swiss, and remand for trial on the merits.

*Reversed.*

---

**8.** Since appellee claimed a three year contract and had gotten a new job at higher pay within two months of her termination, there is a question of whether she would be entitled to any damages for breach of contract.